MATTHEW D. POWERS (S.B. #212682)
mpowers@omm.com
ERIC A. ORMSBY (S.B. #316956)
eormsby@omm.com
O'MELVENY & MYERS LLP
Two Embarcadero Center
28th Floor
San Francisco, CA 94111
Telephone:    +1 415 984 8700
Facsimile:    +1 415 984 8701

BERIT G. FITZSIMMONS (S.B. #313520)
bfitzsimmons@omm.com
O'MELVENY & MYERS LLP
1999 Avenue of the Stars
8th Floor
Los Angeles, CA 90067
Telephone:    +1 310 553 6700
Facsimile:    +1 310 246 6779

HANNAH Y. CHANOINE (*pro hac vice*)
hchanoine@omm.com
O'MELVENY & MYERS LLP
7 Times Square
New York, NY 10036
Telephone:    +1 212 326 2000
Facsimile:    +1 212 326 2061

*Attorneys for Defendant StubHub, Inc.*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## OAKLAND DIVISION

LISA ALCARAZ and BRIAN HONG, individually and on behalf of all others similarly situated,

               Plaintiffs,

    v.

StubHub, Inc.,

               Defendant.

Case No. 4:24-cv-00427-JSW

**STUBHUB'S NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Hearing Date:  May 28, 2024
Time:  9:00 AM
Judge:  Hon. Jeffrey S. White
Courtroom: 5, 2nd Floor

Complaint filed: January 24, 2024
Trial Date: None set

1

**NOTICE OF MOTION AND MOTION TO DISMISS**

2

**TO PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

3

PLEASE TAKE NOTICE THAT on May 28, 2024, at 9:00 a.m. or as soon thereafter as

4 the matter may be heard, in the United States District Court, Northern District of California,

5 Oakland Courthouse, located at 1301 Clay Street, Courtroom 5, before the Honorable Jeffrey S.

6 White, Defendant StubHub, Inc. ("StubHub") will, and hereby does, move the Court for an order

7 dismissing all of the claims in Plaintiffs' Class Action Complaint (the "Complaint") pursuant to

8 Federal Rules of Civil Procedure 9(b) and 12(b)(6).  In an abundance of caution, StubHub

9 concurrently files this Motion together with its motion to compel arbitration and stay Plaintiffs'

10 claims.  However, should the Court grant that motion, the Court need not address the arguments

11 raised in this Motion.

12

Through this Motion, StubHub seeks an order dismissing Plaintiffs' (1) cause of action

13 under California's Ticket Sellers Law (Cal. Bus. & Prof. Code § 22502.2) (the "TSL"), because

14 StubHub is not a "ticket seller" within the meaning of that statute; (2) causes of action under

15 California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*) (the "UCL"),

16 Consumers Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*) (the "CLRA"), and False

17 Advertising Law (Cal. Bus. & Prof. Code § 1750, *et seq.*) (the "FAL"), and fraud cause of action

18 for failure to state a claim and plead with sufficient particularity; and (3) unjust enrichment claim

19 for lack of standing.  StubHub respectfully requests that the Court dismiss the Complaint with

20 prejudice.

21

This Motion is based on this Notice of Motion, the accompanying brief, the papers and

22 records on file in this action, and such other written and oral argument as may be presented to the

23 Court.

24

25

26

27

28

1     Dated:  March 25, 2024

2                         MATTHEW D. POWERS
HANNAH Y. CHANOINE

3                         ERIC ORMSBY
BERIT G. FITZSIMMONS

4

5                         O'MELVENY & MYERS LLP

6

7                         By:  /s/ *Matthew D. Powers*

8                         Matthew D. Powers
*Attorneys for Defendant StubHub, Inc.*

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ............................................................................................ 1

II.   FACTUAL BACKGROUND ........................................................................... 2

III.  LEGAL STANDARDS.................................................................................... 4

IV.   ARGUMENT .................................................................................................. 5

      A.    Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted ..................... 5

            1.    StubHub Is Not a Ticket Seller ................................................... 5

            2.    Plaintiffs Fail to Plead the Elements of Their Fraud-Based Claims ........... 6

                  a.    Plaintiffs Fail to Allege a Misrepresentation that Would
                        Deceive a Reasonable Consumer ................................... 7

                  b.    Plaintiffs Fail to Allege Reliance ................................... 9

                  c.    Plaintiffs Do Not Allege an Injury ................................. 9

                  d.    Plaintiffs Do Not Plead Fraud with Sufficient Particularity. ......... 10

                  e.    Alleged "Dark Patterns" Do Not Amount to Actionable
                        Conduct .......................................................... 11

            3.    The Remaining Prongs of Plaintiffs' UCL Claim Fail ............................ 12

                  a.    Plaintiff Cannot Meet the UCL's "Unlawful" Prong................... 12

                  b.    Plaintiff Cannot Meet the UCL's "Unfair" Prong.................... 13

            4.    Plaintiff's Tag-Along Claims Should Be Dismissed ............................... 15

V.    CONCLUSION ............................................................................................ 15

1

## TABLE OF AUTHORITIES

2

**Page**

__CASES__

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) ................................................. 4, 10, 13

*Backhaut v. Apple, Inc.,*
74 F. Supp. 3d 1033 (N.D. Cal. 2014) ..................................... 9

*Balistreri v. Pacifica Police Dep't,*
901 F.2d 696 (9th Cir. 1988) ............................................. 4

*Bardin v. DaimlerChrysler Corp.,*
136 Cal. App. 4th 1255 (2006) .......................................... 13

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................. 4, 9

*Bower v. AT&T Mobility, LLC,*
196 Cal. App. 4th 1545 (2011) .......................................... 10

*Charbonnet v. Omni Hotels & Resorts,*
2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ........................... 8, 11

*Coleman v. Mondelez Int'l Inc.,*
554 F. Supp. 3d 1055 (C.D. Cal. 2021) ............................... 10, 11

*Daugherty v. Am. Honda Motor Co.,*
144 Cal. App. 4th 824 (2006) .......................................... 13

*Davidson v. Kimberly-Clark Corp.,*
889 F.3d 956 (9th Cir. 2018) ........................................... 10

*Davis v. HSBC Bank Nev., NA.,*
691 F.3d 1152 (9th Cir. 2012) ........................................... 8

*Day v. California Lutheran Univ.,*
2024 WL 649239 (C.D. Cal. Jan. 19, 2024) .............................. 10

*Donley v. Live Nation Ent., Inc.,*
2024 WL 794641 (C.D. Cal. Feb. 23, 2024) ............................. 10

*Drum v. San Fernando Valley Bar Ass'n,*
182 Cal. App. 4th 247 (2010) ....................................... 13, 14

*Ebner v. Fresh, Inc.,*
838 F.3d 958 (9th Cir. 2016) ............................................ 7

*Fabozzi v. StubHub, Inc.,*
2012 WL 506330 (N.D. Cal. Feb. 15, 2012) ............................... 6

*Ford v. Hotwire, Inc.,*
2008 WL 5874305 (S.D. Cal. Feb. 25, 2008) ............................. 8

*Hadley v. Kellogg Sales Co.,*
243 F. Supp. 3d 1074 (N.D. Cal. 2017) ................................. 14

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

**TABLE OF AUTHORITIES**
(continued)

Page

*Hale v. Sharp Healthcare*,
 183 Cal. App. 4th 1373 (2010)...................................................................................... 10

*Hammerling v. Google LLC*,
 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ........................................................................ 9

*Hanscom v. Reynolds Consumer Prods. LLC*,
 2022 WL 591466 (N.D. Cal. Jan. 21, 2022) ................................................................ 15

*Harris v. Las Vegas Sands*,
 2013 WL 5291142 (C.D. Cal. 23 Aug. 16, 2013) ......................................................... 8

*Hill v. StubHub, Inc.*,
 219 N.C. App. 227 (2012).............................................................................................. 6

*Hodges v. Apple Inc.*,
 2013 WL 4393545 (N.D. Cal. Aug. 12, 2013) ............................................................ 13

*In re Facebook PPC Advert. Litig.*,
 709 F. Supp. 2d 762 (N.D. Cal. 2010) ......................................................................... 15

*Ingels v. Westwood One Broad. Servs., Inc.*,
 129 Cal. App. 4th 1050 (2005)..................................................................................... 13

*Kearns v. Ford Motor Co.*,
 567 F.3d 1120 (9th Cir. 2009)................................................................................. 5, 10

*Knowles v. Arris Int'l PLC*,
 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019) ............................................................ 14

*Kwan v. SanMedica Int'l*,
 854 F.3d 1088 (9th Cir. 2017)........................................................................................ 5

*Kwikset Corp. v. Superior Ct.*,
 51 Cal. 4th 310 (2011) .................................................................................................. 9

*Lagrisola v. N. Am. Fin. Corp.*,
 96 Cal. App. 5th 1178 (2023), *review denied* (Feb. 14, 2024)................................. 10

*Licul v. Volkswagen Grp. of Am., Inc.*,
 2013 WL 6328734 (S.D. Fla. Dec. 5, 2013) ............................................................... 15

*Lovejoy v. AT&T Corp.*,
 92 Cal. App. 4th 85 (2001) .......................................................................................... 15

*McGlinchy v. Shell Chem.*,
 845 F.2d 802 (9th Cir. 1988).......................................................................................... 4

*Moore v. Trader Joe's*,
 4 F.4th 874 (9th Cir. 2021)........................................................................................ 7, 9

*Morgan v. Wallaby Yogurt Co.*,
 2013 WL 5514563 (N.D. Cal. Oct. 4, 2013)................................................................. 7

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

**TABLE OF AUTHORITIES**
**(continued)**

Page

*Moss v. U.S. Secret Serv.*,
    572 F.3d 962 (9th Cir. 2009) .................................................................................... 4, 12

*Myers-Armstrong v. Actavis Totowa, LLC*,
    382 F. App'x 545 (9th Cir. 2010) ................................................................................. 15

*Nolte v. Cedars-Sinai Med. Ctr.*,
    236 Cal. App. 4th 1401 (2015) ..................................................................................... 14

*Peterson v. Cellco P'ship*,
    164 Cal. App. 4th 1583 (2008) ..................................................................................... 10

*Porras v. StubHub, Inc.*,
    2012 WL 3835073 (N.D. Cal. Sept. 4, 2012) ................................................................. 6

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) .......................................................................... 9

*Rosado v. eBay Inc.*,
    53 F. Supp. 3d 1256 (N.D. Cal. 2014) ........................................................................... 12

*Saini v. Sutter Health*,
    80 Cal. App. 5th 1054 (2022) ......................................................................................... 7

*Salas v. Whirlpool*,
    2024 WL 694067 (C.D. Cal. Jan. 24, 2024) ................................................................... 9

*Salazar v. Honest Tea, Inc.*,
    2015 WL 7017050 (E.D. Cal. Nov. 12, 2015) ................................................................ 12

*Searle v. Wyndham Int'l, Inc.*,
    102 Cal. App. 4th 1327 (2002) ..................................................................................... 14

*Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*,
    660 F. Supp. 3d 863 (N.D. Cal. 2023) ........................................................................... 6

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ........................................................................................ 15

*Spiegler v. Home Depot U.S.A., Inc.*,
    552 F. Supp. 2d 1036 (C.D. Cal. 2008), *aff'd*, 349 F. App'x 174 (9th Cir. 2009) .................. 14

*Stanley v. Bayer Healthcare LLC*,
    2012 WL 1132920 (S.D. Cal. Apr. 3, 2012) .................................................................... 5

*Vess v. Ciba-Geigy Corp. USA*,
    317 F.3d 1097 (9th Cir. 2003) ...................................................................................... 10

*Walker v. Countrywide Home Loans, Inc.*,
    98 Cal. App. 4th 1158 (2002) ........................................................................................ 8

*Watkins v. MGA Ent., Inc.*,
    550 F. Supp. 3d 815 (N.D. Cal. 2021) ............................................................................ 9

**TABLE OF AUTHORITIES**
(continued)

Page

*Weinstein v. eBay, Inc.*,
    819 F. Supp. 2d 219 (S.D.N.Y. 2011) ........................................................................ 6

*Woods v. Google, Inc.*,
    889 F. Supp. 2d 1182 (N.D. Cal. 2012) ................................................................... 14

**STATUTES**

Cal. Bus. & Prof. Code § 22502.2 ........................................................................... 5

Cal. Bus. & Prof. Code § 22503 ........................................................................ 1, 6

**OTHER AUTHORITIES**

FTC, *Bringing Dark Patterns to Light*, App. A (2022) ........................................... 11

**RULES**

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 4

Fed. R. Civ. P. 9(b) ....................................................................................... 2, 5, 10

1    I.      **INTRODUCTION**

2           Plaintiffs allege that they were misled when they purchased tickets through StubHub's

3    website because StubHub's "Estimated Fees Filter" understated the final price of the tickets they

4    purchased by $2 to $3.  Compl. ¶¶ 4, 7-8.  All of the claims in the Complaint should be dismissed

5    as a matter of law.[1]  Plaintiffs fail to allege the facts necessary to support key elements of their

6    claims—namely that StubHub engaged in any deceptive or misleading practices.

7           Plaintiffs contend that the Estimated Fees Filter on StubHub's website misleads

8    purchasers by "understat[ing]" fees.  Plaintiffs also contend that StubHub's deception is

9    compounded by other features of the purchase process, including (1) presenting the total price at

10   the final checkout screen, (2) displaying a countdown clock, and (3) informing the purchasers of

11   other users' event-page views and ticket purchases.  Plaintiffs claim that StubHub's conduct

12   amounts to TSL, UCL, CLRA, and FAL violations.

13          The Complaint suffers from several fundamental flaws.  ***First***, StubHub is not a "ticket

14   seller" within the meaning of the TSL because it does not "sell[] admission tickets to sporting,

15   musical, theatre, or any other entertainment event[s]."  Cal. Bus. & Prof. Code § 22503.  Rather,

16   as Plaintiffs acknowledge, StubHub runs "the leading ***marketplace*** for ***fans*** to buy and sell

17   tickets."  Compl. ¶ 13 (emphasis added).  ***Second***, Plaintiffs never come close to pleading any

18   deceptive practices.  For one, the Estimated Fees Filter is not in any way misleading; in fact, it

19   does precisely what its name suggests: provides an ***estimate*** of the fees that could be added on

20   (based on factors such as purchaser location and delivery method), and that ***are fully disclosed***, at

21   the end of a ticket purchase.  Indeed, as discussed below, it is well-settled that disclosing total

22   fees for the first time on a final checkout webpage is not deceptive.  And Plaintiffs' attempt to

23   cast StubHub's practices as "dark patterns" also falls flat.  Not only do they mischaracterize

24   StubHub's practices, Plaintiffs also fail to explain how these practices were actually deceptive.

25   And perhaps most importantly, they never allege that these "dark patterns" actually constitute

26   _____

27   [1] In an abundance of caution, StubHub concurrently files this Motion together with its motion to
     compel arbitration and stay Plaintiffs' claims ("Arbitration Motion").  However, should the Court
     grant StubHub's Arbitration Motion, the Court need not address the arguments raised in this

28   Motion.

DEFENDANT'S MOTION TO DISMISS
                                                                4:24-CV-00427-JSW

UCL, CLRA, or FAL violations. **Third**, Plaintiffs do not plead reliance on any specific deceptive conduct beyond formulaic recitations that they "reasonably relied on Defendant's representations and warranties," which are insufficient to meet the pleading standard. **Fourth**, Plaintiffs have not pled an economic injury. They do not allege facts showing that they could have obtained tickets at a lower price from some other source, that the tickets were worth less than StubHub represented, or that the tickets were different from what they wanted and expected to buy. And, *fifth*, Plaintiffs do not meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b) ("Rule 9(b)") for their fraud-based claims.

Plaintiffs also assert tag-along claims for fraud and unjust enrichment, which likewise fail. Plaintiffs' fraud claims bear the same fatal flaws as their UCL, CLRA, and FAL claims. And their unjust enrichment claim fails because (i) they do not allege that they lack an adequate remedy at law; (ii) unjust enrichment is not a standalone cause of action in this jurisdiction; and (iii) the claim impermissibly duplicates their statutory consumer-fraud claims.

## II.   FACTUAL BACKGROUND

StubHub is an online marketplace "for **fans** to buy and sell tickets." *See* Compl. ¶ 13 (emphasis added). StubHub itself does not sell tickets; rather, it is a ticket resale platform. ECF No. 19-1 ("Wright Decl.") ¶ 4. Plaintiffs Lisa Alcaraz and Brian Hong allege various claims related to their 2023 ticket purchases on StubHub.com using the Estimated Fees Filter, including that the purchase process manipulates consumers.[2] *See* Compl. ¶¶ 6-8, 24.

**Ticket Selection:** When purchasing tickets on StubHub.com, users first select the event they want to attend. Wright Decl. ¶ 6. StubHub then shows them a list of available tickets with prices. *Id*. If the purchaser wants the displayed price to include estimated fees, they can select the "Filters" option in the page's top left corner, then toggle on the filter labeled "[s]how prices with estimated fees." *Id*. ¶ 7; *see also* Compl. ¶ 14. StubHub



---

[2] StubHub's records indicate that Alcaraz actually bought her ticket in August 2022, not August 2023, as the Complaint alleges. *See* Compl. ¶ 7; Wright Decl. ¶ 3.

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

does not preselect the Estimated Fees Filter for purchasers, nor does it contrast that option with different color font before the purchaser turns the filter on.  Wright Decl. ¶ 7; *contra* Compl. ¶ 24.

Once the purchaser selects a ticket, they see the price (including estimated fees, if the filter is toggled on), quantity, location, and payment options.  Wright Decl. ¶ 8; *see also* Compl. ¶ 15.  Tickets are typically for particular seats or seating sections, so each ticket is a unique good with few or no exact equivalents.  *See* Wright Decl. ¶ 6.

**Countdown Timer:** Next, the purchaser is notified that they have 10 minutes to complete the purchase.  *See* Wright Decl. ¶ 8.  If the user does not complete the purchase within 10 minutes, they are redirected to the ticket selection window, and StubHub releases the tickets they initially chose so that others have the opportunity to purchase them.  *Id.*

**Ticket Data:** When the purchaser confirms the number of tickets they wish to purchase, StubHub may highlight information, reflecting actual viewing or sales data, to help the purchaser gauge whether it makes sense to finalize their purchase at that time and for that price, including whether ticket prices have increased recently, how the price compares to a 7-day average, how many people have viewed an event in the last hour, how quickly an event is selling, and what other tickets to that event have sold recently and at what price.  Wright Decl. ¶ 9; Compl. ¶ 18.

**Purchaser Information and Payment Method:** A purchaser then logs into their StubHub account or chooses to proceed as a guest.  Wright Decl. ¶ 10; Compl. ¶ 21.  A guest needs to input their contact information, including a name, phone number, and email address.  Wright Decl. ¶ 10; *see also* Compl. ¶ 21.  StubHub uses that information to, *inter alia*, deliver tickets and secure payment.  Wright Decl. ¶ 10.  The next page prompts purchasers to select a payment method and input billing information.  *Id.*

**Final Checkout Screen and Total Fees:** On the final checkout screen, the purchaser sees an order summary that notes the total ticket price, including all fees.  *Id.* ¶ 11; *see also* Compl. ¶ 22.  The difference between the ticket price initially shown using the Estimated Fees Filter and the final price is the ticket-delivery cost, which depends on the delivery method the consumer selects.  Wright Decl. ¶ 11.  Delivery fees for electronic tickets cover the generation, storage, and transmission of the ticket, as well as fulfillment support.  *Id.*  Other delivery methods, like FedEx

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1  or UPS, inevitably cost more, but StubHub cannot accurately calculate that cost before consumers

2  select a delivery method and shipment destination.  *Id.*

3       At that point, the purchaser can click "Buy Now."  *Id.* ¶ 12.  Directly above the "Buy

4  Now" button is text informing the purchaser that "[b]y clicking the button below you

5  acknowledge and accept our terms and

6  conditions and privacy policy."  *Id.*  The

7  "terms and conditions" are offset in

8  different color font, underlined, and



9  hyperlinked so that purchasers can view StubHub's Global User Agreement simply by clicking on

10  the text.  *Id.* ¶¶ 12-13.  StubHub warns about potential fees in its Global User Agreement, stating:

11  "We may charge fees for selling and/or buying Tickets through our Site and/or otherwise using

12  our Services, as well as delivery or fulfillment fees (collectively referred to as 'Service Fees').

13  Service Fees may vary depending on event type, Ticket type and location."  *Id.*, Ex. A § 6.1.

14  **III.   LEGAL STANDARDS**

15       Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) where there is

16  either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a

17  cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

18  And while the Court must accept well-pled facts as true, "conclusory allegations without more are

19  insufficient to defeat a motion to dismiss…."  *McGlinchy v. Shell Chem.*, 845 F.2d 802, 810 (9th

20  Cir. 1988).  Accordingly, the Court should not assume the truth of legal conclusions merely

21  because they are pled in the form of factual allegations, nor accept as true allegations contradicted

22  by judicially noticeable facts.  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009).  "[P]laintiff's

23  obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and

24  conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl.*

25  *Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Instead, for the Complaint to survive a motion to

26  dismiss, "the non-conclusory 'factual content,' and reasonable inferences from that content, must

27  be plausibly suggestive of a claim entitling [Plaintiffs] to relief."  *Moss v. U.S. Secret Serv.*, 572

28  F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

Moreover, a plaintiff asserting claims under the UCL, CLRA, and/or FAL bears the burden of proving that the challenged representations are false or misleading. *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017); *Stanley v. Bayer Healthcare LLC*, 2012 WL 1132920, at *3 (S.D. Cal. Apr. 3, 2012). And fraud-based claims, like those brought under these statutes, must be pled with sufficient particularity to meet Rule 9(b)'s heightened standard. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).

## IV. ARGUMENT

### A. Plaintiffs Fail to State a Claim upon Which Relief Can Be Granted

Plaintiffs' complaint fails to state a claim on which relief can be granted for multiple reasons. *First*, they do not and cannot allege that StubHub is a "ticket seller" within the meaning of the TSL. *Second*, for their fraud-based claims under the UCL, CLRA, and FAL, Plaintiffs fail to plead the necessary elements—namely, a misrepresentation that would deceive a reasonable consumer, reliance upon that misrepresentation, and economic injury—and fail to meet the heightened pleading standard required for allegations of fraud under Rule 9(b). Relatedly, the alleged "dark patterns" are not the type of conduct (i) proscribed by the relevant statutes or (ii) frowned upon by the Federal Trade Commission ("FTC"). *Third*, Plaintiffs' claims under the "unlawful" and "unfair" prongs of the UCL fail because (i) Plaintiffs have not pled a violation of any statutes, and (ii) the practices addressed in the "fraudulent" and "unlawful" prongs wholly overlap those underlying the "unfair" prong. *Fourth*, Plaintiffs' tag-along fraud claim fails for the same reasons that their claims under the "fraudulent" prong of the UCL, the CLRA, and the FAL all fail. And, *fifth*, Plaintiffs lack standing to assert an unjust enrichment claim, which, in any event, is not a standalone claim in California.

#### 1. StubHub Is Not a Ticket Seller

In the Complaint, Plaintiffs assert that StubHub's conduct violates the TSL's prohibition on "represent[ing] that [one] can deliver or cause to be delivered a ticket at a specific price or within a specific price range and [then] fail[ing] to deliver within a reasonable time or by a contracted time the tickets at or below the price stated." *See* Compl. ¶ 30 (quoting Cal. Bus. & Prof. Code § 22502.2). But the TSL imposes obligations only on "ticket sellers," *see id.*; *see also*

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1  Cal. Bus. & Prof. Code § 22503 (defining "ticket seller"), and "StubHub is not a 'ticket seller' . . .

2  under California's ticket seller statute." *Porras v. StubHub, Inc.*, 2012 WL 3835073, at *3 (N.D.

3  Cal. Sept. 4, 2012) (collecting cases); *see also Weinstein v. eBay, Inc*., 819 F. Supp. 2d 219, 229–

4  30 (S.D.N.Y. 2011) (finding StubHub is a "facilitator of third party ticket sales"); *Hill v.*

5  *StubHub, Inc.*, 219 N.C. App. 227, 248-49 (2012) (holding that under North Carolina's ticket

6  seller statute, "the undisputed evidence establishes that [StubHub] was neither a ticket seller nor

7  the ticket seller's agent").  Indeed, Plaintiffs admit as much when they describe StubHub as "the

8  leading marketplace for **fans** to buy and sell tickets," Compl. ¶ 13 (emphasis added), and when

9  they explain StubHub's revenue model by differentiating between "the business"—*i.e.*,

10  StubHub—on the one hand, and "the sellers," on the other.  *Id.* ¶ 32.

11         Plaintiffs' citation of a news article's description of StubHub as having "sold $4.75 billion

12  in tickets" and collected "$1.1 in ticket fees" does nothing to change the reality, as recognized by

13  courts in this District, that StubHub "is a marketplace for third-party users to buy and sell tickets"

14  and that it "does not actually buy or sell tickets." *Fabozzi v. StubHub, Inc.*, 2012 WL 506330, at

15  *1 (N.D. Cal. Feb. 15, 2012).  And their allegation that StubHub makes money through fees on

16  sales, while technically accurate, relies on a quotation about a different entity altogether, eBay,

17  Inc. (StubHub's then-parent).[3]  In other words, this quotation from eBay's 2020 Annual Report

18  does not (a) discuss StubHub's business model—it discusses eBay's; and (b) contradict the well-

19  settled view that StubHub is not a "ticket seller."  *Porras*, 2012 WL 3835073, at *3.

20              2.    **Plaintiffs Fail to Plead the Elements of Their Fraud-Based Claims**

21         Plaintiffs' fraud-based claims—the fraudulent prong of the UCL claim (Count II), the

22  CLRA claim (Count III), and the FAL claim (Count IV)—fail for the following reasons.  **First**,

23  Plaintiffs have not alleged a misrepresentation that would deceive a reasonable consumer

24  because, as courts throughout California have held, disclosing fees for the first time on an online

---

[3] Without the language added in square brackets, the quotation reads: "We earn revenue primarily through fees collected on successfully closed sales."  eBay Inc., Annual Report (Form 10-K) at 2 (Jan. 31, 2020), https://ebay.q4cdn.com/610426115/files/doc_financials/2020/ar/2020-Annual-Report.pdf.  Even though the Annual Report is "not physically attached to [Plaintiffs'] pleading," the Court may consider it because its "contents are alleged in [the] complaint," and there is no "question" as to its "authenticity."  *Smith v. GlaxoSmithKline Consumer Healthcare Holdings (US) LLC*, 660 F. Supp. 3d 863, 873 (N.D. Cal. 2023).

checkout page is not misleading to reasonable consumers.  **Second**, aside from insufficient formulaic recitations of the reliance element, Plaintiffs do not plead that they relied on any alleged misrepresentations in making their purchasing decision.  **Third**, Plaintiffs fail to allege an economic injury, because they do not plead that they could have purchased tickets elsewhere at a lower price or that the product was somehow worth less than what they expected to buy.  **Fourth**, Plaintiffs fail to state with particularity the circumstances constituting the alleged fraud.  And, **fifth**, the so-called "dark patterns" alleged in the Complaint either (i) are not what the FTC sought to curtail in bringing "dark patterns" to light, or (ii) do not amount to deceptive conduct proscribed by the UCL, CLRA, and FAL.  Plaintiffs also fail to sufficiently allege that they relied on any "dark patterns" in making their purchasing decision.

> a.   **Plaintiffs Fail to Allege a Misrepresentation that Would Deceive a Reasonable Consumer**

To survive a motion to dismiss with respect to its UCL, CLRA, and FAL claims, Plaintiffs must allege (i) a misrepresentation or concealed fact and (ii) that reasonable consumers are likely to be deceived by the challenged statement or omission.  *See Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016); *see also Morgan v. Wallaby Yogurt Co.*, 2013 WL 5514563, at *7 (N.D. Cal. Oct. 4, 2013).  This is "not a negligible burden."  *Moore v. Trader Joe's*, 4 F.4th 874, 882 (9th Cir. 2021).  To meet it, there must be more than a mere possibility that the challenged statements "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner."  *Ebner*, 838 F.3d at 965.  In other words, Plaintiffs must allege facts demonstrating that StubHub's website could mislead "a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances."  *Id.*

But here, Plaintiffs' allegations all boil down to an accusation that StubHub "suppress[ed] the true price of the tickets" by "displaying the price of the tickets as purportedly including estimated fees but systematically including additional fees at the end of the checkout process."  Compl. ¶¶ 56, 70.  Multiple courts have rejected this theory, holding that disclosing fees for the first time at the checkout stage is not misleading to reasonable consumers.  *See, e.g.*, *Saini v. Sutter Health*, 80 Cal. App. 5th 1054, 1061-62 (2022) (service fee disclosure in final bill not

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1    misleading where fee's existence was disclosed in hospital "chargemaster, to which signage in the

2    emergency room directs" patients); *Charbonnet v. Omni Hotels & Resorts*, 2020 WL 7385828, at

3    *1-*4 (S.D. Cal. Dec. 16, 2020) (fee not revealed until plaintiff was "ready to buy"); *Harris v.*

4    *Las Vegas Sands*, 2013 WL 5291142, at *2–3 (C.D. Cal. 23 Aug. 16, 2013) (disclaimer

5    underneath "Grand Total" stating that "[t]otal does not include applicable daily resort fee"); *Ford*

6    *v. Hotwire, Inc.*, 2008 WL 5874305, at *3–4 (S.D. Cal. Feb. 25, 2008) (disclosure at checkout

7    that "resort fees may be imposed").

8        *Charbonnet* is instructive.  There, the plaintiff alleged that advertisement of a hotel room's

9    "daily rate" was misleading because it did not "reflect [a] mandatory $25 property fee that was

10   included in the total room charge," and that was not disclosed to her until she was "ready to buy."

11   2020 WL 7385828, at *1.  In dismissing her claim, the court noted that the hotel "explicitly

12   discloses that the daily rate advertised does not equal the total cost of the room" and clearly

13   "states the higher, total price for the room that 'includes taxes & fees'" prior to purchase.  *Id.* at

14   *3.  The court found this "disclosure would put a reasonable consumer on notice that they would

15   be charged some . . . fees in addition to the daily rate."  *Id.*  Because Plaintiffs here similarly

16   allege that the total price was disclosed ***prior*** to their final purchase (*see* Compl. ¶ 22), they have

17   "not adequately alleged a cognizable legal theory of how reasonable consumers would be

18   deceived by [StubHub]'s representations."[4]  *Charbonnet*, 2020 WL 7385828, at *3.

19       Here, Plaintiffs claims hinge on a counterintuitive interpretation of what "Estimated"

20   means.  The Estimated Fees Filter is what it says it is—a functionality that provides an ***estimate***

21   of what the additional fees might be based, *inter alia*, on the purchaser's chosen delivery method

22   and location.  *See supra* at 2-3.  By alleging that they were misled to believe that an ***estimate***

23   would be the ***exact*** purchase price, Plaintiffs essentially "base [their] deceptive advertising claims

24

---

25   [4] StubHub's User Agreement also explicitly states that it "may charge fees for . . . buying Tickets
     [including] delivery or fulfillment fees," and that any fees would "be disclosed . . . prior to . . .
26   buying a [t]icket."  Wright Decl., Ex. A § 6.1.  Several California cases have found that
     disclosures similar to or even less conspicuous than StubHub's were not misleading.  *See, e.g.*,
27   *Walker v. Countrywide Home Loans, Inc.*, 98 Cal. App. 4th 1158, 1176–77 (2002) (use of word
     "may" in deed of trust authorized lender to charge inspection fees even though specific fees not
28   disclosed in advance); *Davis v. HSBC Bank Nev., NA.*, 691 F.3d 1152 (9th Cir. 2012) (terms and
     conditions disclosed annual credit card fee, but advertising did not).

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1  on unreasonable or fanciful interpretations of" the information offered on StubHub's website, and

2  "dismissal on the pleadings [is therefore] justified." *Moore*, 4 F.4th at 882–83 (citation omitted).

3  b.  **Plaintiffs Fail to Allege Reliance**

4  Under the UCL, FAL, and CLRA, Plaintiffs must also plead that they "actually relied on

5  whatever defect in a product [advertisement] allegedly makes it actionable when making [their]

6  decision to buy the product." *Watkins v. MGA Ent., Inc.*, 550 F. Supp. 3d 815, 834 (N.D. Cal.

7  2021); *see also Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1084 (N.D. Cal. 2022)

8  (plaintiff must "allege that he relied on the misrepresentation in making his purchase").  Since

9  Plaintiffs have not, as discussed *supra*, "plausibly alleged the materiality of the omitted

10  information, it follows that [they have] also not plausibly alleged that [they] relied on the alleged

11  omission." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016).  Nor

12  have Plaintiffs alleged any plausible explanation for how their ticket purchases (at the final

13  checkout page, with all fees disclosed) were done "in reliance" on the price displayed on previous

14  pages when the Estimated Fees Filter was on. *Backhaut v. Apple, Inc.*, 74 F. Supp. 3d 1033, 1048

15  (N.D. Cal. 2014) (dismissing CLRA and UCL claims where plaintiffs "fail to allege that they

16  purchased [products] in reliance on any misrepresentation or omission by [defendant]").

17  Plaintiffs' allegations that they "reasonably relied on Defendant's representations and

18  warranties," Compl. ¶¶ 7–8, are mere "formulaic recitation[s] of the [reliance] element[]" and

19  "will not do." *Twombly*, 550 U.S. at 555.  Because Plaintiffs fail to allege facts showing that the

20  price displayed ***prior*** to the checkout screen "influenced" their decision to buy tickets ***after*** the

21  final price was disclosed, they do not plead reliance, and their UCL, CLRA, and FAL claims fail.

22  *Salas v. Whirlpool*, 2024 WL 694067, at *8 (C.D. Cal. Jan. 24, 2024) (plaintiff must "specify

23  what of the allegedly misleading 'information on the website' [he] actually . . . relied upon").

24  c.  **Plaintiffs Do Not Allege an Injury**

25  Under the UCL, CLRA, and FAL, Plaintiffs must also allege that they were actually

26  injured by StubHub's allegedly false advertising. *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310,

27  323–26 (2011) (plaintiffs asserting UCL and FAL claims must show "economic injury" and that

28  defendant's false advertising caused the injury); *Day v. California Lutheran Univ.*, 2024 WL

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

649239, at *6 (C.D. Cal. Jan. 19, 2024) (plaintiff must allege "concrete economic injury arising from defendants' allegedly unfair practices"); *Hale v. Sharp Healthcare*, 183 Cal. App. 4th 1373, 1386 (2010) ("plaintiffs in a CLRA action [must] show not only that a defendant's conduct was deceptive but that the deception caused them harm").  Because Plaintiffs do "not allege that [they] could have obtained [tickets] at a lower price from another source . . . [t]his is not a case in which . . . the product was worth less than represented by the defendant or was different from what the consumer wanted and expected to buy." *Bower v. AT&T Mobility, LLC*, 196 Cal. App. 4th 1545, 1555 (2011); *see also Lagrisola v. N. Am. Fin. Corp.*, 96 Cal. App. 5th 1178, 1189 (2023), *review denied* (Feb. 14, 2024) (affirming dismissal where plaintiffs do not allege that they "could have obtained [a] loan at the same or lower price"); *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1591 (2008) (no economic injury where plaintiffs did "not allege they could have bought the same insurance for a lower price").  Plaintiffs' "[t]hreadbare recitals of the [injury] element[]," *Iqbal*, 556 U.S. at 678—*i.e.*, that they "incurred charges and/or paid monies for the tickets that they otherwise would not have incurred or paid," Compl. ¶ 71—"do not suffice." *Iqbal*, 556 U.S. at 678.

### d.   **Plaintiffs Do Not Plead Fraud with Sufficient Particularity.**

Allegations of fraud, including under the UCL, CLRA, and FAL, are subject to Rule 9(b)'s heightened pleading standard.  *See Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018); *Kearns*, 567 F.3d at 1125; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud."  Specifically, the pleading must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Donley v. Live Nation Ent., Inc.*, 2024 WL 794641, at *5 (C.D. Cal. Feb. 23, 2024) (citing *Davidson*, 889 F.3d at 964).

The Complaint lacks the "how" required under Rule 9(b).  *See Coleman v. Mondelez Int'l Inc.*, 554 F. Supp. 3d 1055, 1062 (C.D. Cal. 2021) (The "'what' is the allegedly misleading [statement] . . . and the 'how' is the plaintiff's explanation for why [it] is misleading.").  The only supposedly misleading statement Plaintiffs point to is the allegedly inaccurate price estimate

displayed when the Estimated Fees Filter is turned on.  Compl. ¶¶ 15, 22, 29.  But Plaintiffs never provide an "explanation for why [it] is misleading," or state that the estimated price induced them to make a final purchase.  *Coleman*, 554 F. Supp. at 1062.  To the contrary, they explicitly admit that they were presented with the total price (with all fees included) prior to their purchase. Compl. ¶ 22.  Because they acknowledge that StubHub "plainly discloses" the total fees prior to checkout, Plaintiffs cannot meet the heightened pleading standard of Rule 9(b).  *Charbonnet*, 2020 WL 7385828, at *7.

e.   **Alleged "Dark Patterns" Do Not Amount to Actionable Conduct**

Plaintiffs also point to a series of so-called "dark patterns," presumably as a basis for their UCL, CLRA, and FAL claims.  Compl. ¶¶ 24–29.  In addition to the allegedly misleading conduct discussed above, Plaintiffs highlight that StubHub (i) displays the number of users who have viewed a given event page in the last hour, and indicates when tickets for an event are selling quickly; (ii) displays a 10-minute timer once tickets have been selected; (iii) styles and designs its webpages, including through use of different colors and font sizes; (iv) requires users to create an account prior to purchase; and (v) chooses default settings that include fee estimation (the "Alleged Dark Patterns").  *See id.*  None of the Alleged Dark Patterns is deceptive or in line with the "dark patterns" defined by the FTC.  And, perhaps most importantly, Plaintiffs never tie the Alleged Dark Patterns to any of their causes of action.

For example, nowhere in the Complaint do Plaintiffs allege that the information regarding the number of event-page views or how fast tickets are selling is actually inaccurate (because they cannot do so).  The FTC, however, only recognizes dark patterns when companies "say[] inventory is low when it isn't" or "say[] demand is high when it isn't."[5]  In fact, rather than creating "pressure to buy immediately" or "a false sense of high demand," Compl. ¶ 24 (a), these metrics—based on actual transactions and consumer event selections—help purchasers make informed decisions by providing an accurate picture of interest in an event.  *See* Wright Decl. ¶ 9.

---

[5] FTC, *Bringing Dark Patterns to Light*, App. A (2022) [hereinafter "FTC Report"], https://www.ftc.gov/reports/bringing-dark-patterns-light.

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1    Likewise, the countdown clock features prominently in the user interface to alert consumers that

2    they may lose access to their chosen tickets when the time expires, not to "distract" or

3    "misdirect."  Compl. ¶ 24(b)(i), (e)(i).  The timer is critical to maintaining the integrity of the

4    StubHub marketplace because, without it, any potential purchaser could place an indefinite hold

5    on tickets, reducing their supply and increasing their price, to the detriment of other consumers.

6    *See* Wright Decl. ¶ 8.  This is a far cry from the practice identified by the FTC of "[c]reating

7    pressure to buy immediately by showing a *fake* countdown clock that just goes away or resets

8    when it times out."[6]

9         But more significantly, Plaintiffs fail to "connect the dots showing how the alleged

10   [information regarding ticket sales or the countdown timer] misled [them] in a way that a

11   reasonable consumer would be deceived."  *Salazar v. Honest Tea, Inc.*, 2015 WL 7017050, at *6

12   (E.D. Cal. Nov. 12, 2015).  Plaintiffs similarly fail to "connect the dots" with respect to the other

13   Alleged Dark Patterns, *see* Compl. ¶ 24(e)(i)-(ii), (f)-(g), or merely regurgitate their argument that

14   initially advertising part of the total ticket price and later adding fees is deceptive.  *See id.* ¶

15   24(b)(ii), (c)-(d), (e)(iii).  Plaintiffs' claims regarding the Alleged Dark Patterns are thus nothing

16   more than atmospherics.  Despite spending pages of their Complaint bemoaning these practices,

17   *see* Compl. at 14–16, Plaintiffs never explain how the Alleged Dark Patterns support their claims.

18   This sleight of hand—waving StubHub's allegedly bad behavior in front of the Court only to have

19   it later disappear—cannot form the basis for the fraud-based claims, and demonstrates how the

20   "factual content" of the Alleged Dark Patterns is not "plausibly suggestive of a claim entitling

21   [them] to relief."  *Moss*, 572 F.3d at 969.

22        For the foregoing reasons, the fraudulent prong of Plaintiffs' UCL claim (Count II), their

23   CLRA claim (Count III), and their FAL claim (Count IV) all fail.

24              3.    **The Remaining Prongs of Plaintiffs' UCL Claim Fail**

25              a.    **Plaintiff Cannot Meet the UCL's "Unlawful" Prong**

26        "The unlawful prong of the UCL borrows violations of other laws and treats them as

27   independently actionable."  *Rosado v. eBay Inc.*, 53 F. Supp. 3d 1256, 1265 (N.D. Cal. 2014).  In

28   _____
     [6] FTC Report, App. A.

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1    other words, where the plaintiff cannot state a violation under the "borrowed" laws, she also

2    "cannot state a violation of the UCL under the unlawful prong."  *Daugherty v. Am. Honda Motor*

3    *Co.*, 144 Cal. App. 4th 824, 837 (2006); *see also Ingels v. Westwood One Broad. Servs., Inc.*, 129

4    Cal. App. 4th 1050, 1060 (2005) ("A defendant cannot be liable under [UCL's "unlawful" prong]

5    without having violated another law.").  Here, Plaintiffs allege that StubHub acted unlawfully by

6    violating the TSL, CLRA, and FAL.  Because, as discussed *supra*, Plaintiffs fail to state a claim

7    under any of these laws, Plaintiffs' UCL "unlawful" prong claim necessarily fails.

8                b.      **Plaintiff Cannot Meet the UCL's "Unfair" Prong**

9            Conduct is "unfair" where it (1) violates a public policy that is "tethered to specific

10   constitutional, statutory or regulatory provisions," (2) "is immoral, unethical, oppressive,

11   unscrupulous or substantially injurious to consumers," or (3) causes "substantial" injury that is

12   "not outweighed by any countervailing benefits to consumers" and that "consumers themselves

13   could not reasonably have avoided."  *Drum v. San Fernando Valley Bar Ass'n*, 182 Cal. App. 4th

14   247, 257 (2010); *Bardin v. DaimlerChrysler Corp.*, 136 Cal. App. 4th 1255, 1264-73 (2006).

15   Plaintiffs' allegations do not come close to meeting these standards.  Plaintiffs allege that

16   StubHub's conduct violates the UCL "unfair" prong because it "is substantially injurious to

17   consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous as the

18   gravity of the conduct outweighs any alleged benefits attributable to such conduct."  Compl. ¶ 54.

19   In addition to being conclusory statements that the Court need not accept as true, *see Iqbal*, 556

20   U.S. at 678, Plaintiffs' allegations fail to state a claim for the following reasons.

21           **No Violation of Statute**.  StubHub did not violate a "specific constitutional, statutory or

22   regulatory provision."  *Drum*, 182 Cal. App. 4th at 257.  The only laws that Plaintiffs contend

23   StubHub violated are the TSL, UCL, FAL, and CLRA.  But as explained above, StubHub is not

24   subject to the TSL, and Plaintiffs have not pled deception, reasonable reliance, or injury.  *Hodges*

25   *v. Apple Inc.*, 2013 WL 4393545, at *6 (N.D. Cal. Aug. 12, 2013) (dismissing "unfair" UCL

26   claim because plaintiff "fail[ed] to point to any law whose policy Apple violated").

27           **No Immoral or Injurious Conduct**.  Plaintiffs' allegations do not amount to conduct (i)

28   that is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers," or

13

(ii) likely to "cause substantial consumer injury that is not outweighed by countervailing benefits." *Drum*, 182 Cal. App. 4th at 257.  Critically, Plaintiffs allege that ***they saw the fees before purchasing tickets*** and ***agreed that StubHub could charge such fees by assenting to StubHub's User Agreement***.[7]  The UCL's unfairness prong "does not give the courts a general license to review the fairness of contracts."  *Searle v. Wyndham Int'l, Inc.*, 102 Cal. App. 4th 1327, 1334 (2002).  In *Nolte v. Cedars-Sinai Medical Center*, for example, a California court declined to find "unfair" a hospital's practice of billing a patient separately from his physicians, because plaintiff agreed to separate billing in his contract with the hospital.  236 Cal. App. 4th 1401, 1408 (2015).  And courts agree that buyers paying the agreed-on contract price is not "unfair."  *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1045–46 (C.D. Cal. 2008), *aff'd*, 349 F. App'x 174 (9th Cir. 2009) (no "unfair" claim where defendants "complied with the express terms of the contracts [with plaintiffs], and charged plaintiffs in accordance with their terms").  Here, Plaintiffs' assertion that StubHub's conduct qualifies as "unfair" under the UCL should be rejected as a matter of law—particularly since Plaintiffs do not allege that StubHub breached the User Agreement.  *See, e.g.*, *Woods v. Google, Inc.*, 889 F. Supp. 2d 1182, 1195 (N.D. Cal. 2012) (dismissing "unfair" claim where Google did not violate AdSense Policies).

**"Unfairness" Allegations Overlap Other UCL Prongs**.  In addition, "courts in this district have held that where the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs of the UCL do not survive."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104 (N.D. Cal. 2017); *see also Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *17 (N.D. Cal. Aug. 20, 2019); Here, Plaintiffs' "unfair" UCL claim depends on the same practices they contend are "unlawful." *See* Compl. ¶ 54 (alleging StubHub's "acts, omissions, misrepresentations, practices, and nondisclosures as alleged herein ***also*** constitute 'unfair' business acts and practices").  Consequently, Plaintiffs' UCL "unfair" claims overlap completely with their "unlawful" claims, and likewise fail.  *Hadley*, 243 F. Supp. 3d at 1104–05.

---

[7] *See* Wright Decl., Ex. A § 6.

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1    For the foregoing reasons, Plaintiffs' UCL claim (Count II) should be dismissed.

2              4.      **Plaintiff's Tag-Along Claims Should Be Dismissed**

3    **Fraud.**  A plaintiff alleging fraud must establish: "(a) misrepresentation (false

4    representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent

5    to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."  *Lovejoy v.*

6    *AT&T Corp*., 92 Cal. App. 4th 85, 93 (2001).  For all the reasons discussed above, Plaintiffs have

7    failed to allege a misrepresentation (*supra* Section IV.A.ii.a), justifiable reliance (*supra* Section

8    IV.A.ii.b), resulting damage (*supra* Section IV.A.ii.a ), or any harm arising from the "dark

9    patterns" (*supra* Section IV.A.ii.e).  And Plaintiffs have failed to meet Rule 9(b)'s pleading

10   standard (*see supra* Section IV.A.ii.d).  Plaintiffs' fraud claim (Count V) should be dismissed.

11   **Unjust Enrichment.**  Plaintiffs' claim for unjust enrichment fails for several reasons.

12   First, Plaintiffs lack standing to seek this equitable relief because they do not allege that they lack

13   an adequate remedy at law.  *See, e.g.*, *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762,

14   770 (N.D. Cal. 2010) (requiring "absence of an adequate remedy at law").  Second, unjust

15   enrichment is not a standalone cause of action.  *See, e.g.*, *Myers-Armstrong v. Actavis Totowa,*

16   *LLC*, 382 F. App'x 545, 548 (9th Cir. 2010) (no cause of action for unjust enrichment under

17   California law).  Finally, it is well-settled that where "the unjust enrichment claim relies upon the

18   same factual predicates as a plaintiff's legal causes of action, it is not a true alternative theory of

19   relief."  *Licul v. Volkswagen Grp. of Am., Inc.*, 2013 WL 6328734, at *7 (S.D. Fla. Dec. 5, 2013).

20   Here, Plaintiffs explicitly "reallege and reincorporate" their prior allegations, including that

21   StubHub "failed to disclose that there were hidden fees at the end of the checkout process."

22   Compl. ¶¶ 94–99.  Plaintiffs' claims are thus improperly "rooted in the same legal theory and

23   factual allegations as [their] consumer deception claims."  *Hanscom v. Reynolds Consumer*

24   *Prods. LLC*, 2022 WL 591466, at *3 (N.D. Cal. Jan. 21, 2022) (dismissing unjust enrichment

25   claim) (citing *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020)).  The unjust

26   enrichment claim (Count VI) should therefore be dismissed.

27   **V.**      **CONCLUSION**

28       Defendant respectfully requests that the Court dismiss Plaintiffs' Complaint.

DEFENDANT'S MOTION TO DISMISS
4:24-CV-00427-JSW

1    Dated:  March 25, 2024                    O'MELVENY & MYERS LLP

2

3                                              By:  /s/ Matthew D. Powers

4                                              Matthew D. Powers
                                               *Attorneys for Defendant StubHub, Inc.*
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS
                                                     4:24-CV-00427-JSW